## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**SUSAN DIANE VANDERLINDEN,**   )
                                )
           **Petitioner,**      )
                                )
v.                              )
                                )   No. 03-3488-CM
                                )
**RICHARD KOERNER,**            )
                                )
           **Respondent.**      )
                                )

## MEMORANDUM AND ORDER

Petitioner, Susan Diane Vanderlinden, brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Richard Koerner, Warden of the Topeka Correctional Facility, is the respondent. This is petitioner's second habeas petition, filed with leave granted by the Tenth Circuit. Petitioner asserts an actual innocence claim based on newly discovered evidence. Because the court disagrees with petitioner's characterization of, and conclusions drawn from, the new evidence, this petition is denied.

I.     Background

On March 17, 1986, Jimmie Ray Vanderlinden was found dead in his residence near Galena, Kansas. His wrists and ankles were bound, and he had been shot three times in the back of the head. At the time, petitioner's and Mr. Vanderlinden's marriage was estranged. Multiple felony charges were filed against petitioner, Luke Callihan and Stephen Reed. The State's theory of prosecution was that petitioner hired Callihan to kill her husband, and that Callihan had subcontracted the job to Reed, who actually committed the murder. Petitioner has always denied involvement in her husband's murder.

Pursuant to a plea agreement, Callihan pleaded guilty to conspiracy to commit murder in exchange for dismissal of his other charges and his testimony against petitioner and Reed. Callihan testified that petitioner had hired him to kill her husband, and that he in turn hired Reed to carry out the job. He also testified that he transported Reed to the area of the victim's residence the night of the murder, and that the next morning, Reed told Callihan that he had killed Mr. Vanderlinden by shooting him three times in the back of the head.

Dennis Orton, a friend of Callihan's, testified that the morning after the murder, Callihan and Reed came to his home where Callihan informed him that Reed committed the murder. Callihan obtained money from Orton to give to Reed so that Reed could leave town. Orton testified that two weeks later, Reed returned and told Orton that he had killed the victim. Orton also testified that Callihan later identified petitioner as the person who hired Callihan to murder the victim.

Reed, awaiting trial himself, exercised his Fifth Amendment right not to testify at petitioner's trial. The parties dispute whether petitioner testified, although this issue is not pertinent to the court's instant § 2254 habeas motion. A jury convicted petitioner of first degree murder, aggravated kidnapping, aggravated robbery, aggravated burglary, and criminal solicitation on November 20, 1986.

On direct appeal, petitioner's convictions were affirmed by the Kansas Supreme Court on July 8, 1988. On March 7, 1989, petitioner requested a new trial from the Cherokee County District Court, alleging newly discovered evidence. The newly discovered evidence was several statements by family, friends, and acquaintances of Mr. Reed, claiming that he could not have murdered Mr. Vanderlinden because Mr. Reed was in Arkansas at the time. That motion was denied on April 6, 1990. On May 24, 1991, the Kansas Supreme Court affirmed the Cherokee County District Court's

denial of petitioner's motion for new trial. Petitioner then filed for post-conviction relief pursuant to Kan. Stat. Ann. § 60-1507 in the District Court of Cherokee County on March 6, 1996. In that petition, she asserted that she received ineffective assistance of counsel at trial. After the district court denied her petition, petitioner sought reconsideration of her § 60-1507 motion in the same court on December 10, 1998. That motion was denied on October 10, 2001. The Kansas Court of Appeals affirmed the district court's denial of petitioner's § 60-1507 motion on November 1, 2002. On February 4, 2003, the Kansas Supreme Court declined review, and petitioner filed her request for federal habeas relief pursuant to 28 U.S.C. § 2254.

On June 21, 2006, this court ruled on plaintiff's first petition. The court denied petitioner's assertions of ineffective assistance of counsel and arguments related to a state evidentiary hearing. At that time, this court lacked jurisdiction to hear petitioner's newly discovered evidence. The court forwarded petitioner's Traverse and its June 21, 2006 Memorandum and Order to the Tenth Circuit.

On September 15, 2006, the Tenth Circuit granted petitioner's request for leave to file a second habeas petition. Instead of filing a new petition, petitioner, through counsel, requested that this court consider plaintiff's Traverse (Doc. 37) as the second petition. This court held an evidentiary hearing on January 2, 2007. During this hearing, Mr. Reed testified for petitioner and Thomas R. Williams testified for respondent.

II.  Legal Standards

Although plaintiff's second petition, by virtue of being the first petition re-filed, asserts and incorporates by reference, arguments beyond the newly discovered evidence, this court's June 21, 2006 Memorandum and Order resolved those issues. The Tenth Circuit's Order granting petitioner leave to file a second petition depended on the conclusion that petitioner "made a prima facie showing of new facts sufficient to satisfy § 2244(b)(2)(B)." Consequently, the only issue remaining

is petitioner's actual innocence claim.

To assert an actual innocence claim, petitioner must produce new evidence that establishes that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Price v. Friel*, No. 07-4094, 2007 WL 2452699, at *1 (10th Cir. Aug. 30, 2007). This new evidence is typically "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Arrington v. Williams*, 195 F. App'x 761, 762 (10th Cir. 2006); *Rose v. Newton-Embry*, 194 F. App'x 500, 502 (10th Cir. 2006). The court's role is to "make a probabilistic determination about what reasonable, properly instructed jurors would do[,]" based on the total record. *House v. Bell*, 126 S. Ct. 2064, 2077 (2006). The Supreme Court rephrased this duty as: "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

III.    Analysis

Here, petitioner's new evidence is the testimony of Mr. Reed. In his submitted affidavit and during the hearing on January 2, 2007, Mr. Reed stated that although he murdered Mr. Vanderlinden, the crime did not occur as the prosecution's theory suggested. The prosecution argued that petitioner hired Mr. Callihan, who in turn hired Mr. Reed to kill Mr. Vanderlinden. During the trial, Mr. Callihan testified that he was not at the crime scene. Mr. Reed now testifies that Mr. Callihan was at the crime scene. Moreover, Mr. Reed states that Mr. Callihan aimed a firearm at Mr. Reed, ordering him to shoot Mr. Vanderlinden.

Mr. Reed's testimony also differed from the prosecution's murder-for-hire motive. Mr. Reed claims that Mr. Callihan had two independent motives for ordering the murder of Mr. Vanderlinden: (1) Mr. Vanderlinden slapped Mr. Callihan; and (2) Mr. Vanderlinden threatened to report Mr. Callihan's alleged drug trafficking. Mr. Reed believes that Mr. Callihan ordered him to commit the

murder because of Mr. Reed's romantic involvement with a girlfriend of Mr. Callihan. From Mr. Reed's perspective, Mr. Callihan was the "sole catalyst" of the murder. Mr. Reed stated that he never received money for the murder, and never told Mr. Orton that he was hired to kill Mr. Vanderlinden.

First, the court examines the trustworthiness of Mr. Reed's testimony. Mr. Reed has changed his story about his involvement. Before Mr. Reed testified at the evidentiary hearing, he pleaded no contest. According to petitioner's state motion for a new trial on newly acquired evidence, at least eighteen people were prepared to testify that Mr. Reed could not have been the murderer because he was in Arkansas at the time. Among these eighteen people were several relatives of Mr. Reed, including his mother and grandmother. Now, Mr. Reed, who has been paroled, acknowledges that he shot Mr. Vanderlinden, but only because of Mr. Callihan's threats.

On the stand, Mr. Reed's responses were evasive. Mr. Reed appeared to remember portions of the events in detail, but was unsure about key facts. For example, Mr. Reed remembers opening the unlocked door to Mr. Vanderlinden's home, Mr. Callihan entering the home first, and the type of gun Mr. Callihan carried and aimed at him, but has no memory of where the rifle used to shoot Mr. Vanderlinden came from—"apparently it was there and it came out of nowhere"—or what was used to bind Mr. Vanderlinden—"I don't remember [who brought the ropes] . . . I don't even know if he was tied up with rope. Could have been extension cord. Could have been anything." Regarding the woman that was romantically involved with Mr. Reed and Mr. Callihan, the claimed motive for Mr. Callihan to involve Mr. Reed in the murder, Mr. Reed remembers statements she made, where she grew up, and that she had a sister, but not her name. Most notably, Mr. Reed acknowledges being a family friend to petitioner's mother, and providing information about his claimed alibi to petitioner's mother, but denies knowing that the woman was related to petitioner.

Second, the court examines whether Mr. Reed's testimony is sufficient to establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Price*, 2007 WL 2452699, at *1. During the evidentiary hearing, Mr. Reed repeatedly acknowledged that he cannot be sure that petitioner was not involved in the murder. Mr. Reed's testimony presents a new motive for Mr. Callihan to employ Mr. Reed to kill Mr. Vanderlinden, but Mr. Reed's testimony does not discredit or eliminate the prosecution's suggested motive. On cross examination, Mr. Reed stated that what Mr. Callihan told him was not the "real reason" they went to Mr. Vanderlinden's home.

Because the court must consider this new testimony in conjunction with the total record, the court compares Mr. Reed's testimony to the evidence at trial. If true, Mr. Reed's testimony would discredit the testimony of Mr. Callihan and Mr. Orton. Whether jurors initially believed the testimony of Mr. Callihan and Mr. Orton is questionable. Their testimony was contradictory. Mr. Callihan's nefarious reputation was repeatedly addressed. Even if this new evidence would cast a new light on the testimony of Mr. Callihan and Mr. Orton, Mr. Callihan and Mr. Orton were not the only individuals to testify about petitioner hiring Mr. Callihan to kill her husband. Jimmy Holloway, who was romantically tied to petitioner, testified that he had conversations with petitioner about planning to kill Mr. Vanderlinden, that petitioner would hire Mr. Callihan to do so, and that money given to Mr. Callihan was for that purpose. Patsy Duley also testified that petitioner told her about hiring Mr. Callihan, and that Mr. Callihan hired someone else, to kill Mr. Vanderlinden.

Given all of these considerations, the court finds that this new evidence does not "have the indicia of reliability sufficient to make out a claim of actual innocence." *Rose*, 194 F. App'x at 502 (denying an actual innocence claim where the petitioner presented evidence of a person overhearing a person admit to the crime and framing the petitioner. The court stated, "[a]t most, the evidence

-6-

impeaches the credibility of some of the prosecution's witnesses.") The court finds that a reasonable juror could have found petitioner guilty. The petition is denied.

**IT IS THEREFORE ORDERED** that petitioner's second habeas petition is denied.

Dated this 1st day of October 2007, at Kansas City, Kansas.

                                           s/ Carlos Murguia
                                           **CARLOS MURGUIA**
                                           **United States District Judge**